PAUL H. WILLIAMS and ALYS L. WILLIAMS, ET AL, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket Nos. 5142-69, 5143-69, 975-70.
United States Tax Court
T.C. Memo 1973-67; 1973 Tax Ct. Memo LEXIS 223; 32 T.C.M. (CCH) 291; T.C.M. (RIA) 73067; March 22, 1973, Filed Carl F. Bauersfeld, for the petitioners. Richard G. Holloway, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: The respondent determined the following deficiencies in income tax: Petitioners
Years
Deficiencies
Williams
1966
$30,835.17
1967
61,499.68
Woodward
1965
7,536.66
1966
7,137.36
1967
5,399.92
Mersereau
1965
8,832.37
1966
7,310.33
1967
4,587.73 The deficiencies arise as a result of the respondent's disallowance 2 of some or all of the petitioners' claimed charitable contribution carryovers. The sole issue for decision is the fair market value of petitioners' undivided beneficial interests in a certain tract of land in Collier County, Florida, known as Dollar Bay Acreage, on December 28, 1964, and January 4, 1965, when *224 petitioners made gifts of their undivided beneficial interests in the land to the Naples Community Hospital. The parties have filed a stipulation of facts which is incorporated herein by reference. Petitioners Paul H. and Alys L. Williams are husband and wife and resided in Naples, Florida, at the time of filing their petitioner herein. For the calendar years 1966 and 1967 they filed joint income tax returns with the district director of Internal Revenue, Jacksonville, Florida. Petitioners Denton B. and Dorothy D. Woodward are husband and wife and they also resided in Naples, Florida, at the time of filing their petition. For the calendar years 1965, 1966 and 1967 they filed their joint income tax returns with the district director of Internal Revenue, Jacksonville, Florida. Petitioners James G. and Shirley W. Mersereau are husband and wife and resided in Chevy Chase, Maryland, at the time of filing their petition. For the calendar years 3 1965, 1966 and 1967 they filed their joint income tax returns with the district director of Internal Revenue, Baltimore, Maryland.
Reference throughout this opinion to the petitioners will mean the male petitioners only. *225 In September 1958 six investors purchased land in Collier County, Florida, near the City of Naples, hereinafter referred to as the Dollar Bay Acreage, for $272,701. Title to the land was taken by Alvin W. Barkau and Raymond Radabaugh as co-trustees to be held in trust for the following equitable owners: Paul H. Williams
50%
Raymond Radabaugh
25%
Alvin W. Barkau
6-1/4%
Henry B. Watkins, Jr.
6-1/4%
Denton B. Woodward
6-1/4%
James L. Cochrun, Jr.
6-1/4%
On October 15, 1959, Mersereau acquired James L. Cochrun, Jr.'s interest in the trust. The 1958 warranty deed transferring the land described the property as containing 656.45 acres, more or less. This acreage figure was based on an old U.S. Government Survey made in 1876. However, it was stated in the trust agreement that there was a greater number of acres in the property. 4 The trust agreement provided that Raymond Radabaugh, in consideration for being granted by his co-trustees a 25% beneficial interest in the property without having to contribute to the downpayment on the property agreed "to do all boundary surveying, topographic contour maps and all other necessary work to determine the *226 amount of property actually owned by the parties * * * ." Radabaugh also agreed to do "all necessary engineering work, including but not limited to, surveying, plat work and preparing necessary estimates for filling, digging, etc." Radabaugh continually failed to perform the work that he had agreed to do. After five years petitioners became dissatisfied with the project and decided to make a gift of their interest in the trust to the Naples Community Hospital. On December 28, 1964, Williams assigned half his interest in the trust and Woodward and Mersereau assigned their entire interests in the trust to the Hospital. On January 4, 1965, Williams assigned the remaining half of his interest to the Hospital. On January 14, 1965, the board of directors of the Hospital formally accepted these gifts. A condition of these gifts was that the property not be sold by the Hospital for less than $1,000 per acre. On their respective income tax returns for 1964 and 5 1965, Williams, Woodward and Mersereau reported the fair market value of their gifts to the Hospital as follows: Value of land
750 acres at $1,550 per acre
$1,162,500
Williams' 50% interest
581,250
1/2 reported in 1964
290,625
1/2 reported in 1965
290,625
Woodward's 6-1/4% interest
all reported in 1964
72,656.25
Mersereau's 6-1/4% interest
all reported in 1964
72,656.25
*227 On April 29, 1965, Radabaugh sold his 25% interest in the trust for $85,000 (or, on the basis of his pro rata interest in the trust, a price equivalent to approximately $510 per acre) to Key Island, Inc., a corporation whose stock is owned by Lester J. Norris. During the period 1965 through 1968 the Naples area of Collier County experienced rapid development and there was a sharp increase in land values. Lester J. Norris was opposed to having the Dollar Bay Acreage developed in any manner other than as a high class residential development. The board of trustees of the Hospital submitted to his wishes and when it sold the property the deed of sale contained a restriction limiting the use of the property to single family residences. The Hospital, Norris for Key Island, Inc., Watkins and Barkau received an offer in May 1968 to purchase the entire property for approximately 6 $1,500 per acre based on 656 acres. In August 1968 the Dollar Bay Acreage was sold pursuant to this offer. Dollar Bay Acreage is undeveloped property located about 3-1/2 miles southeast of the City of Naples. The west side of the property fronts on Dollar Bay and Naples Bay. Across the bay from *228 the property is Keewaydin Island, an island about six miles long, the western coast of which fronts on the Gulf of Mexico. The property is rhomboidal shaped and low in elevation, sloping upward from the south and west to the north and east. The highest point is about 4 feet above sea level. A good portion of the property is below mean high tide. There are salt flats and marsh areas on the property. During heavy rains or unusually high tides these areas flood and remain standing in water. The lower portions of the land are covered with mangrove, a land-building plant requiring a constant flow of salt water across its roots. On the higher portions are palmetto and pine trees. The property was zoned agricultural during 1964 and 1965. There was no potable water on the property and no electricity in 1964 and 1965. Access to the Dollar Bay Acreage, other than by small boat, was down Kelly Road from the Tamiami Trail (U.S. 41). Kelly Road ended about 1/4 mile from the northeast corner of the property. 7 Acreage Petitioners employed L. L. Hampton of Naples, a professional land surveyor, to survey the Dollar Bay Acreage. A survey report, completed on December 30, 1964, showed *229 a total of approximately 750 acres. Natural processes in creased the upland described by the warranty deed, and therefore, the mean high tide line, the boundary of the upland under the warranty deed, significantly changed over the approximately 100 years since the 1876 survey. In addition, Hampton included the area beyond the mean high tide to the new bulkhead line approved by the City of Naples. The bulkhead line is the line seaward of which no fill may be placed. Hampton's survey report was revised on May 26, 1971, to show a total of 742 acres, including 666.291 acres under the warranty deed plus 75.64 acres from the mean high tide line to the city bulkhead line. Respondent fully acknowledges the authenticity of the survey and admits that the area described in the warranty deed contains 666 acres rather than 656 acres. However, respondent does not agree that the Dollar Bay Acreage includes the 75.64 acres from the mean high tide line to the city bulkhead line. This disputed area is submerged land. The petitioners have failed to prove that they had acquired 8 title to the submerged lands. [2] Therefore, we find as a fact that the Dollar Bay Acreage consisted of 666 acres. *230 However, since the submerged land can be sold only to the owner of the uplands (Section 253.12, Fla. Stat. Ann. (1962)), it represents a valuable appurtenance to the 666 acres, and this factor is taken into account in our finding of fair market value, infra. Valuation Section 170, I.R.C. 1954 provides that there shall be allowed as a deduction any charitable contribution payment of which is made within the taxable year. A contribution may be made in property, in which case the amount deductible is the fair market value of the property at the time of the contribution. Section 1.170-1(c) (1), Income Tax Regs.
Petitioners contend that the fair market value of the Dollar Bay Acreage on the dates of the gifts (December 28, 1964 and January 4, 1965) was $1,550 per acre *231 based on 742 acres, whereas respondent contends it was $700 per acre based on 666 acres. 9 Petitioners presented five expert witnesses and respondent put on two experts. We have meticulously reviewed the stipulation of facts, exhibits and testimony of the experts and other witnesses. It would serve no useful purpose to review the evidence or indicate to what extent and in what particulars we agree or disagree with the numerous judgment factors that the experts took into account in reaching their conclusions. The matter is not one that is susceptible of a precisely accurate determination. It is one that calls for the exercise of our best judgment on all the materials in the record. Using our best judgment on all the evidence before us we have reached the conclusion and hereby find as a fact that the Dollar Bay Acreage had a fair market value of $850 per acre, or a total of $566,100, on December 28, 1964, and January 4, 1965. The value of each petitioner's beneficial interest in the trust holding title to such property was a proportional part of the overall value. The petitioners' charitable deductions in respect of the gifts to the Hospital may be computed accordingly *232 in Decision to be entered under Rule 50 Footnotes
1. Consolidated herewith for trial, briefing and opinion are the cases of Denton B. Woodward and Dorothy D. Woodward, docket No. 5143-69; and James G. Mersereau and Shirley W. Mersereau, docket No. 975-70. ↩
2. Section 253.12 of Fla. Stat. Ann.↩ (1962) provides in part: "[The] title to all sovereignty tidal and submerged bottom lands * * * is vested in the trustees of the internal improvement trust fund. The trustees of the internal improvement trust fund may sell and convey such * * * submerged lands * * * upon such prices, terms and conditions as they see fit."